# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRAIG WILLIAMSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-772-R |
| | ) |
| RUSH ENTERPRISES, INC., a/k/a | ) |
| RUSH TRUCK CENTER OF SAN | ) |
| ANTONIO, NEW HAMPSHIRE | ) |
| INSURANCE | ) |
| COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are two motions to remand, the first filed by Plaintiff Craig Williamson, (Doc. No. 15) and the second filed by the Defendant New Hampshire Insurance Company.[1] (Doc.No. 17). Plaintiff challenges the timeliness of Defendants' Notice of Removal and whether the parties are diverse so as to support jurisdiction under 28 U.S.C. § 1332. New Hampshire Insurance challenges only whether the parties are diverse. Defendants Cam-Am Trucks, Rush Enterprises, and Rush Truck Centers of San Antonio responded in opposition to both motions, asserting that the Notice of Removal was timely and that the Court has subject matter jurisdiction over the claims because the Plaintiff is diverse from the Defendants. Having considered the parties' submissions, the Court finds as follows.

---

[1] Plaintiff objects to New Hampshire Insurance Company being identified as an intervenor in the Notice of Removal. He sued New Hampshire Insurance Company, which provided workers' compensation benefits to him after the accident and asserts a subrogation interest. The outcome of the motion does not depend on the capacity of the insurer, and therefore the Court will retain the parties as pled by Plaintiff.

This action was filed in August 2017 in the District Court of McClain County, having been previously filed and voluntarily dismissed by Plaintiff in the District Court of Oklahoma County after many years of litigation. In the Amended Petition, the most recent state court pleading preceding the July 2018 removal to this Court, Plaintiff Williamson alleged that he is a resident and citizen of Seagoville, Texas, specifically the Federal Correctional Institute (FCI) Seagoville.[2] He asserted in his Amended Petition that he moved to Texas with the intent to make it his home, selling all real and personal property in Oklahoma, and intending to remain in Texas following his eventual release from incarceration. Defendants were alleged to be domiciled in either Texas or North Carolina.

On August 10, 2018, Defendants removed the action to this Court, asserting in the Notice of Removal that Plaintiff is not domiciled in Texas, but rather in Oklahoma because a prisoner is presumed to be "a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state." *Smith v. Cummings*, 445 F.3d 1254, 1260(10th Cir. 2006)(citations omitted). Because no Defendant is a citizen of Oklahoma, they argued removal was proper. Defendants further argued removal was timely under 28 U.S.C. § 1446(b), because the Notice was filed within thirty days of counsel's receipt of Plaintiff's July 13, 2018 deposition, wherein Defendants inquired about Plaintiff's alleged Texas domicile. As a result of Plaintiff's responses to the deposition inquiries, Defendants contend it is apparent that Plaintiff is a citizen of Oklahoma and therefore the parties are diverse. Additionally, the amount in controversy

---

[2] Plaintiff was convicted in this Court in 2015 of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and originally housed by the Bureau of Prisons at FCI-El Reno in Oklahoma. He is serving a 210- month sentence.

exceeds one million dollars, and therefore the jurisdictional requirement for diversity, $75,000, is fulfilled.

The timeliness of Defendants' removal hinges on when they were put on notice of the facts on which they rely to argue that Mr. Williamson was not a citizen of Texas. As noted, a prisoner is presumed to be a citizen of the State of which he was a citizen before his incarceration, in this case Oklahoma. Defendants were aware of Plaintiff's incarceration in Oklahoma because they were actively litigating the initial tort action at that time he was convicted. Therefore, and despite the fact that Plaintiff had been moved by the Bureau of Prisons to Texas, this case was subject to removal when it was filed and Defendants had thirty days from service to remove this action. The July 2018 Notice of Removal was therefore untimely, and the case is subject to remand. The Court's conclusion finds support in part in Defendants' brief in response to the Motion to Remand filed by New Hampshire Life Insurance. Therein Defendants challenge the evidence submitted by the intervenor as insufficient to overcome the presumption and state, "[a]t the time of the filing of the subject lawsuit, Plaintiff was an Oklahoma resident (having been initially incarcerated in FCI-EL Reno), who happened to be involuntarily transferred to Texas." (Doc.No. 19).[3] Accepting Defendants' assertions as true, the Notice of Removal was untimely filed and remand pursuant to 28 U.S.C. § 1447(c) is appropriate.[4]

---

[3] The parties do not address the interplay between the relative burdens of the parties. Defendants, as the parties invoking the Court's jurisdiction, bear the burden of establishing diversity by a preponderance of the evidence. Plaintiff, an inmate who is incarcerated as a result of a sentence imposed in this Court and who admittedly was domiciled in Oklahoma at that time, is subject to a rebuttable presumption that he is domiciled in Oklahoma.

[4] As a result, the Court rejects Defendants' contention that Plaintiff's deposition was necessary before they could seek removal and their reliance on 28 U.S.C. § 1446(b)(3).

Furthermore, the Court finds that Plaintiff has overcome the presumption that he is domiciled in Oklahoma with his verified Amended Complaint. Because certain of the Defendants are also domiciled in Texas, diversity is lacking and therefore, the Court lacks subject matter jurisdiction over this proceeding.[5] "[D]iversity jurisdiction exists only if no plaintiff and no defendant are citizens of the same state—that is, there must be 'complete diversity between all plaintiffs and all defendants.'" *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). The Tenth Circuit adopted the factors set forth by the Sixth Circuit in *Stifel* for assessing whether the prisoner has rebutted the presumption regarding domicile:

> [T]he court should accord weight to appellant's declarations of intentions, but in the circumstances of this case the physical facts pertaining to appellant's incarceration and to the conduct of his personal affairs assume perhaps a greater than usual significance because appellant's statements of intention cannot bear on the fact of his initial relocation to Pennsylvania. The court should consider factors such as the possibility of parole for appellant, the

---

[5] Much of Defendant's argument and the inquiries to Plaintiff at his deposition imply that an incarcerated individual cannot change his domicile because his movement is never truly "voluntary." Given an inmate's lack of freedom, it is difficult to manifest a change and an intention to establish domicile in a new location. However, Plaintiff, is hardly the first federal inmate to have successfully requested a transfer. Defendants take two opposing positions on Plaintiff's transfer request, conceding in response to his Motion to Remand that he made the request, although there was no guarantee that it would be granted, but arguing in response to New Hampshire Life's motion that the only evidence of his request is his own statement. The granting of requests by federal prisoners for transfer is never guaranteed, but such requests can be made and granted. *See Smith v. Cummings*, 445 F.3d at 1260 ("If, for instance, the prisoner decides he wants to live in another state upon release and is therefore assigned to a prison in that state, his domicile becomes that state.")(citation omitted).

> [T]he bare fact that a person has been "compelled" to relocate within a particular jurisdiction does not ordinarily prevent him from becoming domiciled therein, although courts are justifiably concerned with substantiating declared intentions. Second, persons are "compelled" to relocate by a variety of circumstances, ranging from pursuit of employment to therapeutic dictates for illness; from the desire to attend educational or vocational institutions to the demands of the sovereign. Although these forces may differ in kind, they often equate in degree, and yet the law in this area has developed along the lines of *per se* rules tailored to the type of compulsion being exerted rather than in the direction of varying standards of proof directly with the strengths of the constraints upon individual freedom of action.
>      We believe that the prisoner, like the serviceman or the Cabinet official, should not be precluded from showing that he has developed the intention to be domiciled at the place to which he has been forced to remove. No good reason appears for applying a contrary *per se* rule to him by making the presumption that he has retained his former domicile an irrebuttable one.

*Stifel v. Hopkins*, 477 F.2d 1116, 1124 (6th Cir. 1973).

4

> manner in which appellant has ordered his personal and business transactions, and any other factors that are relevant to corroboration of appellant's statements. These factors must be weighed along with the policies and purposes underlying federal diversity jurisdiction to determine whether appellant has overcome the presumption that he has maintained his former domicile.

*Stifel*, 477 F.2d at 1126-27 (footnotes omitted). Here, Plaintiff expressed in both his Verified Amended Complaint and in his deposition the desire to remain in Texas following completion of his 121-month sentence. He was reared in Texas and has family there, and since his custody was moved to Texas he has had visits from his family, which did not occur when he was at FCI-El Reno.[6] Furthermore, as noted by the intervenor, Plaintiff divested himself of all property in Oklahoma, real and personal, and indicates that he does not intend to return to Oklahoma upon his release from incarceration.[7]

The fact that Plaintiff could be transferred again before his anticipated release near the year 2028 does not dissuade the Court from reaching this result, because domicile requires both physical presence and an intent to remain. Thus, Plaintiff has established that his domicile is Texas, and moving him elsewhere would not alter his domicile, but merely his residence. Again, his custodial status does not foreclose the possibility that he changed his domicile.

Having concluded that diversity is lacking and that removal was untimely, the Court hereby remands this matter to the District Court of McClain County, Oklahoma.[8]

---

[6] Although the location of Plaintiff's family is not directly a determining factor, it supports Plaintiff's statement that he intends to remain in Texas once his incarceration has ended.

[7] That Plaintiff may have to report to a probation officer in Oklahoma at some point is not dispositive. It is not unusual for supervision of a former inmate to be transferred to another federal jurisdiction.

[8] As a result, the Court need not consider whether New Hampshire Insurance Company was properly named as a Defendant or whether it should have been re-aligned and whether its consent for removal was necessary. See Doc. No. 15.

IT IS SO ORDERED this 6th day of December 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE